IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DOUGLAS A. STUNKEL | |
| Plaintiff, | 4:22-CV-3114 |
| vs. | |
| KARIN L. NOAKES, et al. | MEMORANDUM AND ORDER |
| Defendants. | |

Two defendants in this case, the Honorable Karin L. Noakes and Custer County Sheriff Daniel Osmond, presided over and executed orders in two state court cases involving the plaintiff, Douglas A. Stunkel. Stunkel alleges that Judge Noakes and Sheriff Osmond violated his due process rights during the state court proceedings and asks the Court to prohibit them from continuing to do so. This matter is before the Court on a motion to dismiss by Judge Noakes (filing 6) and a motion to dismiss by Sheriff Osmond (filing 8) both asserting that this Court lacks subject matter jurisdiction and that Stunkel fails to state a claim. The Court agrees and will grant those motions.

BACKGROUND

According to Stunkel's complaint, Judge Noakes presided over two state district court cases, Custer County Case No. 21-120 and Custer County Case No. 19-116, involving Stunkel. Filing 1 at 4. The cases included a replevin hearing and an order by Judge Noakes threatening to issue an arrest warrant if Stunkel did not report for a negotiated jail term for contempt of court. Filing 1 at 4. The replevin hearing also resulted in a court order for Sheriff Osmond to assist Custer Federal State Bank in taking possession and selling property

that Stunkel partially owns. Filing 1 at 4. Stunkel alleges various violations of his due process rights as a result of these hearings and court orders. Filing 1.

Stunkel claims that during a recorded court hearing Judge Noakes failed to answer two constitutional questions regarding her Oath of Office and failed to produce her Oath of Office when he requested. Filing 1 at 3.[1] Stunkel additionally claims that Jason White, an attorney representing Custer Federal State Bank, fraudulently filed an affidavit in support of replevin that contained attorney testimony and did not include firsthand knowledge. Filing 1 at 1-2. He claims the court relied on this affidavit to issue the orders. Filing 1 at 4. Stunkel then claims that Judge Noakes attempted to coerce him into accepting a jail term when she threatened to issue an arrest warrant if he did not report for his negotiated jail term for contempt of her previous order in Case No. 21-120. Filing 1 at 4. Finally, Stunkel claims that Judge Noakes and Sheriff Osmond assisted Custer Federal State Bank in taking possession of his partially owned property and disregarded his property rights. Filing 1 at 4.

Stunkel alleges that these actions by Judge Noakes, Sheriff Osmond, and White violated his rights to due process. Filing 1 at 5. Stunkel seeks a "writ of prohibition" enjoining Judge Noakes, Sheriff Osmond, and White from moving forward in the violation of his rights to due process. Filing 1 at 6. He additionally requests that Sheriff Osmond be prohibited from arresting Stunkel for being on the property involved in the replevin action and be prohibited from assisting in the replevin action to take possession of the property. Filing 1 at 6.

---

[1] The Court notes that some of Stunkel's allegations and claims are similar to those commonly associated with so-called "sovereign citizens," although whether that's deliberate or coincidental is unclear at this point.

Judge Noakes moves to dismiss for either lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted. Filing 6. Judge Noakes argues that as a judicial officer she is entitled to immunity from suit and that *Rooker-Feldman* doctrine additionally bars relief in this action. Sheriff Osmond also moves to dismiss for either lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted. Filing 8. Sheriff Osmond argues that the Court does not have diversity or federal question jurisdiction, the factual allegations are insufficient, the Court cannot issue a writ of mandamus, and that he is entitled to immunity from suit. Stunkel has not responded to either motion. *See* NECivR 7.1(b)(1)(B); NECivR 6.1; Fed. R. Civ. P. 6(d).

## STANDARD OF REVIEW

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA,* 615 F.3d 985, 988 (8th Cir. 2010). Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter,* 516 F.3d 709, 712 (8th Cir. 2008).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.,* 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Accordingly, the Court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)—that is, the Court accepts all factual allegations in the pleadings as true and views them in the

3

light most favorable to the nonmoving party. *Id.*; *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). These motions are facial attacks.

A motion pursuant to Rule 12(b)(6) challenges whether the complaint states a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## DISCUSSION

Stunkel brings an action against Judge Noakes and Sheriff Osmond for alleged violations of his due process rights during and following state court proceedings. However, Judge Noakes and Sheriff Osmond both allege that the nature of the judicial or quasi-judicial functions they were performing entitled them to immunity from any claims brought regarding those actions.

### JUDGE NOAKES' IMMUNITY

"Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991). Judicial immunity is deeply entrenched in our judicial system and applies even to

4

allegations of malice or corruption. *See Pierson v. Ray,* 386 U.S. 547, 554 (1967). Additionally, "a judge is absolutely immune from liability for his judicial acts even if [her] exercise of authority is flawed by the commission of grave procedural error." *Stump v. Sparkman,* 435 U.S. 349, 359 (1978).

A judge is absolutely immune from suits in all but two narrow sets of circumstances. *Mireles,* 502 U.S. at 11. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. Although this principle may seem unfair to litigants, it is for the benefit of the public and of the "highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in [her], shall be free to act upon [her] own convictions, without apprehension of personal consequences to [herself]." *Id.* at 10 (quoting *Bradley v. Fisher,* 80 U.S. 335, 347 (1871)).

Stunkel's allegations against Judge Noakes are based on actions she took in her judicial capacity. The judicial nature of an act depends on the nature and function of the particular act, not the propriety of the act itself. *Id.* at 13. Therefore, when determining if an act was judicial, the Court will analyze factors that relate to the nature and function of the act itself, such as "whether it is a function normally performed by a judge" and whether the parties "dealt with the judge in [her] judicial capacity." *Stump,* 435 U.S. at 350. An act is not judicial if it is rather administrative, legislative, or executive in nature. *Forrester v. White,* 484 U.S. 219, 219 (1988).

Here, Stunkel alleges that Judge Noakes violated his due process rights by not producing her Oath of Office, coercing him into accepting a jail term by signing an order threatening to issue a warrant for his arrest if he does not report for a negotiated jail term for contempt, and assisting Sheriff Osmond

5

and Custer Federal State Bank in taking possession of his property. Filing 1 at 4. He also alleges that the court relied on a fraudulent affidavit from White to issue the orders. However, Judge Noakes' actions during those state court cases were all within her judicial capacity.

To begin with, Stunkel himself argues that producing her Oath of Office is required as a judicial officer. There is no authority for that, but Stunkel says there is—and an allegation regarding an action that he alleges to be a judicial duty inherently does not overcome judicial immunity. Additionally, Judge Noakes' order threatening to issue an arrest warrant is within her judicial capacity. Judge Noakes had issued an order and Stunkel has failed to abide by that order, so she threatened him with contempt. These are core judicial acts, as Judge Noakes was performing a function normally performed by a judge when she used contempt to enforce a prior order, and Stunkel was dealing with Judge Noakes in her judicial capacity. See *Stump*, 435 U.S. at 350.

Similarly, Judge Noakes was acting within her judicial capacity when engaging with Sheriff Osmond and Custer Federal State Bank. Judge Noakes issued an order and Sheriff Osmond and the bank were executing that order. Again, she was performing ordinary judicial functions and dealing with Stunkel in her judicial capacity. See *id*. at 350; *Liles v. Reagan,* 804 F.2d 493, 495 (8th Cir. 1986) (stating that holding contempt proceedings is an act normally performed by a judge). Stunkel makes an additional allegation that White submitted a fraudulent affidavit and the court relied on it, but even assuming the validity of that untested allegation, Judge Noakes was still acting within her judicial capacity when she accepted evidence and issued the order. Judge Noakes was acting within her judicial capacity at all times at issue, and so the exception to judicial immunity for actions outside of a judge's judicial capacity does not apply.

Nor was Judge Noakes acting absent any jurisdiction during the alleged due process violations. "The scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump,* 435 U.S. at 356. In Nebraska, district court judges are granted "general, original, and appellate jurisdiction in all matters, both civil and criminal, except where otherwise provided." Neb. Rev. Stat. § 24-302. Stunkel claims the court lacked jurisdiction but provides no explanation or exception to the broad jurisdiction of the district court. Filing 1 at 5. And it's clear that Judge Noakes had the power to hear the issues and make the decisions she did in district court—it's plain that the district court has authority to issue and enforce writs of replevin.

Furthermore, judicial immunity extends to suits where plaintiffs seek injunctive relief. Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *See Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019). These two exceptions do not apply, so Stunkel is barred from injunctive relief against Judge Noakes.

Because Judge Noakes' actions were within her judicial capacity and not taken in the complete absence of all jurisdiction, Judge Noakes is entitled to judicial immunity from the claims brought against her. The current case presents no viable exceptions to Judge Noakes' immunity. Thus, judicial immunity bars Stunkel from relief against Judge Noakes in this case.

Judge Noakes also argues that *Rooker-Feldman* doctrine bars Stunkel's claim; however we need not consider whether *Rooker-Feldman* applies because the claims fall squarely within Judge Noakes' judicial immunity.

SHERIFF OSMOND'S IMMUNITY

Sheriff Osmond argues that he is entitled to quasi-judicial immunity because the alleged due process violations occurred during his execution of a court order.

State officials acting in their official capacity may be entitled to either absolute or qualified immunity. The presumption is that qualified immunity is "sufficient to protect government officials in the exercise of their duties," and so courts have recognized absolute immunity sparingly and "refused to extend it any further that its justification would warrant." *Burns v. Reed,* 500 U.S. 478, 486-87 (1991). However, an official's performance of some "special functions" may be entitled to absolute immunity because of their similarity to other functions entitled to absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993). The functional approach employed for immunity allows for absolute judicial immunity to be extended beyond judges to other officials performing functions "intimately associated with the judicial phase" of the process. *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). This extension turns on "the nature of the function performed not on the person's title," and thus non-judicial officials can enjoy "quasi-judicial immunity for the performance of judicial functions." *Robinson v. Freeze,* 15 F.3d 107, 109 (8th Cir. 1994).

Although absolute immunity is usually reserved for exercises of discretion rather than ministerial acts, *see Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 436 (1993), quasi-judicial absolute immunity has been extended to officials' purely ministerial acts that they are required to perform under court order or at a judge's discretion. *Robinson,* 15 F.3d at 109 (stating that a bailiff would enjoy absolute immunity for actions specifically ordered by the trial judge and related to judicial function); *Rogers v. Bruntrager,* 841 F.2d 853, 856. (8th Cir. 1988) (finding a circuit clerk absolutely immune from damages

8

arising from their issuance of an arrest warrant at the direction of the assistant circuit judge); *Duba v. McIntyre,* 501 F.2d 590, 592 (8th Cir. 1974) (finding a police chief was absolutely immune from a claim arising from executing a court order to arrest a plaintiff and attach and remove his hogs for sale). However, that immunity does not apply to actions that cannot be equated to judicial functions because they go beyond the scope of the judge's express or implied instructions. *See Brooks v. Clark Cnty.,* 828 F.3d 910, 917 (9th Cir. 2016) (finding that a marshal is not absolutely immune when he used excessive force to execute a judge's order); *Heartland Acad. Cmty. Church v. Waddle,* 427 F.3d 525, 531 (8th Cir. 2005) (denying judicial immunity for a social worker that used bad information to obtain an order that then violated a party's constitutional rights).

Here, Stunkel alleges that Sheriff Osmond violated his due process rights during the replevin actions that allowed Custer Federal State Bank to take possession of, sell, or dispose of property he partially owns. Filing 1 at 6. During those actions that Stunkel alleges violated his due process, Sheriff Osmond was executing a court order by Judge Noakes. While qualified immunity is often sufficient to protect government officials, in this case, Sheriff Osmond was performing a function intimately associated with the judicial functions for which Judge Noakes receives absolutely judicial immunity. Thus, Sheriff Osmond may be entitled to quasi-judicial immunity. *See Imbler,* 424 U.S. at 430; *Robinson,* 15 F.3d at 109.

Sheriff Osmond was acting under a court order at Judge Noakes' discretion in possessing Stunkel's property, which would afford him the extension of quasi-judicial immunity. *See Tymiak v. Omodt,* 676 F.2d 306, 308 (8th Cir. 1982) (finding a sheriff immune from suit when acting pursuant to a state court order to evict the plaintiff). Further, Stunkel does not allege that

9

Sheriff Osmond acted beyond the scope of the court order; rather, Stunkel takes issue with the order to possess the property itself. Based on Stunkel's own allegations, Sheriff Osmond was performing an act intimately associated with the judicial functions of Judge Noakes, was executing a court order, and was acting within the scope of the court order, so he is entitled to quasi-judicial immunity for any actions brought against him within that scope.

Stunkel also seeks injunctive relief against Sheriff Osmond and asks the Court to prohibit Sheriff Osmond from arresting Stunkel or assisting with the replevin actions against him. As discussed above, the Eighth Circuit bars injunctive relief against judicial officials, or in this case the recipient of quasi-judicial immunity. *Just. Network*, 931 F.3d at 763. Thus, Stunkel is barred from injunctive relief from Sheriff Osmond in this case. Having concluded that Sheriff Osmond is entitled to immunity, the Court need not address the jurisdictional or alternative immunity issues raised by the defendant.

## CONCLUSION

For the reasons explained above, the Court finds that Judge Noakes and Sheriff Osmond are absolutely immune from Stunkel's claims for relief. Judge Noakes was acting in her judicial capacity and with jurisdiction during the alleged violations of due process. Sheriff Osmond was performing quasi-judicial functions under court order during the alleged violations of due process. Judge Noakes and Sheriff Osmond are absolutely immune from claims within that scope. Accordingly,

IT IS ORDERED:

1. Judge Noakes' motion to dismiss (filing 6) is granted.

2. The plaintiff's claims against Judge Noakes are dismissed and Judge Noakes is terminated as a party.

3. Sheriff Osmond's motion to dismiss (filing 8) is granted.

4. The plaintiff's claims against Sheriff Osmond are dismissed and Sheriff Osmond is terminated as a party.

Dated this 16th day of August, 2022.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
United States District Judge